UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DERRICK D. COLEMAN,

                    Plaintiff,                    Case No. 1:14-cv-681

v.                                          Honorable Robert J. Jonker

KAREN S. RICH et al.,

                    Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Defendants Hallworth, Winger and Burt for failure to state a claim. The Court will order service of the amended complaint on the remaining Defendants.

**Factual Allegations**

Plaintiff Derrick D. Coleman is incarcerated by the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF), where the events giving rise to his complaint occurred.  In his amended complaint,[1] he sues the following MDOC employees at MCF: Officers R. Dykstra and (Unknown) Smith; Housing Unit Manager (HUM) J. Winger; Warden Sherry L. Burt; and Nurse Karen S. Rich.  He also sues Dr. (Unknown) Stieve, the Chief Medical Officer for the MDOC, and the following employees of Corizon, Inc.: Chief Executive Officer (CEO) Richard Hallworth and Dr. Harriet Sqier.

Plaintiff alleges that he broke his right forearm at around 7:00 on the evening of May 31, 2013, while participating in recreational activities at MCF.  He informed Officers Dykstra and Smith that he injured his arm, and they could see that his forearm was "injured/deformed," so they contacted healthcare services.  (Am. Compl. 2, docket #6.)  There were no available "Qualified Health Care Professionals" at the facility at that time, but Plaintiff was allowed to speak with Nurse Rich over the telephone.  He told her that he was in severe pain and that he could feel his bones "clicking" inside his forearm.  (*Id.*)  She told him that she could not assess him at that time because she was located at a different facility, the Brooks Correctional Facility (LRF).[2]  He told her that he could not make it through the night without some medical treatment, but she told him to "take it

---

[1]After filing his original complaint, Plaintiff filed a motion for leave to amend the complaint (docket #5) and an amended complaint (docket #6).  Plaintiff does not need leave of the Court to amend his complaint.  At this stage of the proceedings, he may amend it once as a matter of course.  *See* Fed. R. Civ. P. 15(a).  Thus, Plaintiff's motion for leave to amend will be granted, and the Court will accept the amended complaint as the operative pleading.

[2]Plaintiff asserts that MCF and LRF are near each other.  According to the MDOC's website, MCF and LRF are adjacent facilities located at 2400 and 2500 South Sheridan Drive, respectively, in Muskegon, Michigan.  *See* http://michigan.gov/corrections/0,4551,7-119-68854_1381_1385---,00.html (listing prison facilities, with links to their addresses) (accessed September 29, 2014).

easy" and to lie down as comfortably as possible until the following morning.  (*Id.* at 3.)  She said that the best she could do for him was to have the unit officers give him some ice.  (*Id.* at 14.)

        That night, Plaintiff repeatedly complained to Officers Dykstra and Smith that he was in severe pain, but they told him to return to his cell.  He claims that they should have prepared a "Critical Incident Report" in accordance with MDOC Policy Directive 01.05.120, which would have "mandated and precipitated" an urgent response by healthcare services.  (*Id.* at 11.)

        At around 8:00 the next morning, Plaintiff was seen by Nurse Cooper, who determined that Plaintiff had broken his arm.  She put his arm in a sling and gave him some ice and ibuprofen.  She also telephoned Dr. Nelson to inform him that Plaintiff needed urgent medical treatment.  Dr. Nelson informed Nurse Cooper that he wanted to evaluate Plaintiff in two days' time, on June 3, 2013.  For the rest of the day and that evening, Plaintiff was in severe pain.  The next day, he did not see any medical staff, even though he repeatedly complained about his pain to housing unit staff.

        On June 3, 2013, at about 10:00 in the morning, he met with Dr. Nelson.  Dr. Nelson examined Plaintiff and determined that he had broken his right ulna.  Dr. Nelson immediately called Drs. Stieve and Sqier to arrange a consultation for urgent medical treatment.  Dr. Nelson also gave Plaintiff a stronger pain medication and called a local hospital to arrange for surgery.  Defendants Stieve and Sqier denied the request for urgent treatment, however, and Plaintiff was told to return to his cell.

        Plaintiff did not see any medical personnel the following day.  On June 5, 2013, Plaintiff was taken to LRF for an x-ray.  The x-ray confirmed that Plaintiff had broken his ulna, but

again, Plaintiff was denied urgent medical treatment and told to return to his cell to endure another full day of pain.

On June 6, 2013, Plaintiff received more x-rays and a visit with a surgeon. The x-rays showed that Plaintiff had broken his elbow as well as his arm. Based on the new results, Plaintiff was approved for surgery. The surgeon implanted a steel plate in Plaintiff's forearm and reconstructed his elbow. Plaintiff saw the surgeon again on June 20, 2013, to have staples removed from his arm. Plaintiff asserts that he has not received "extensive" physical therapy and has not regained full mobility of his arm. (Am. Compl. 6, docket #1.)

In August 2013, after Plaintiff requested a copy of the critical incident report for his injury, the assistant Housing Unit Manager in Plaintiff's unit asked Defendants Smith and Dykstra to prepare a back-dated report. They refused to do so, and HUM Winger told them that they did not need to be involved.

Based on the foregoing allegations, Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs. In addition, Plaintiff asserts that HUM Winger attempted to cover up an investigation into the incident leading to Plaintiff's injury, and that Warden Burt failed to properly train her subordinates to handle situations that require urgent care.

Plaintiff also claims that the lack of adequate staffing at MCF on May 31, 2013 (according to Plaintiff, there was no nurse on duty from 10:00 pm to 6:00 am) violated MDOC Policy Directive 03.04.100, which requires that urgent conditions be treated as soon as possible.

## Discussion

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*

- 4 -

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

- 5 -

### A. CEO Hallworth

Plaintiff sues the CEO of Corizon, Inc., Richard Hallworth, but Plaintiff does not allege any involvement by Hallworth in the events at issue in the complaint.  Indeed, though Hallworth is identified in the list of defendants, he is not mentioned elsewhere in the complaint.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants.  *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim).  Where, as here, a person is named as a defendant without an allegation of specific conduct, the claim is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.  *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries").  Plaintiff claims that Defendant Hallworth was responsible for Plaintiff's medical care, but Plaintiff does not allege any specific conduct by Hallworth, let alone conduct that affected Plaintiff's care.  Consequently, Plaintiff does not state a claim against Hallworth.

- 6 -

### B.  Warden Burt

Plaintiff claims that Warden Burt is liable for failing to adequately supervise or train her subordinates.  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).   A claimed constitutional violation must be based upon active unconstitutional behavior.   *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act or failure to train.  *See Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) ("[A] supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'") (quoting *Hays v. Jefferson Cnty.*, 668 F.2d 869, 874 (6th Cir. 1982)). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Plaintiff has failed to allege that Defendant Burt engaged in any active unconstitutional behavior.  Accordingly, he fails to state a claim against her.

### C.  HUM Winger

Plaintiff asserts that HUM Winger attempted to impede an investigation into his deliberate indifference claim by allowing Officers Dykstra and Smith not to sign an incident report regarding Plaintiff's injury.  These allegations do not state a claim against Winger.  Plaintiff does not have a constitutional right to obtain a written incident report from prison officials; thus, Winger

did not violate his rights by preventing Officers Dykstra and Smith from signing one.  In addition, to the extent that Plaintiff sues Winger because of the actions of her subordinates in the housing unit, Winger is not liable for those actions.  *See* Section B, *supra*.  In short, Plaintiff fails to state a claim against Winger because Plaintiff has not alleged that she engaged in any unconstitutional conduct.

### D.  Defendants Dykstra, Smith, Rich, Stieve and Sqier

Plaintiff alleges that Nurse Rich refused to assess Plaintiff or offer him treatment on May 31, 2013, after he complained to her that he was in severe pain and could feel the bones in his arm clicking.  In addition, Officers Dykstra and Smith failed to prepare a report which would have required an urgent response from healthcare, and failed to respond to his ongoing requests for care, even though he was complaining about severe pain and they could see that his arm was injured.  Also, Drs. Stieve and Sqier twice denied urgent medical treatment for the break in his arm even after such treatment was requested by an examining physician and the break was confirmed by an x-ray.  As a result of the delay in care, Plaintiff alleges that he suffered significant pain and discomfort from May 31 to June 6, 2013, when he was approved for surgery.  At this stage of the proceedings, the Court concludes that Plaintiff's allegations are adequate to state an Eighth Amendment claim against Defendants Dykstra, Smith, Rich, Stieve and Sqier.

### Conclusion

The Court will grant Plaintiff's motion for leave to amend the complaint (docket #5), and accept Plaintiff's amended complaint (docket #6) as the operative pleading.  After reviewing the amended complaint as required by the Prison Litigation Reform Act, the Court determines that Defendants Hallworth, Winger and Burt will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will serve the amended

complaint against Defendants Dykstra, Smith, Rich, Stieve and Sqier.

An Order consistent with this Opinion will be entered.


Dated:   October 9, 2014             /s/ Robert J. Jonker
                                      ROBERT J. JONKER
                                      UNITED STATES DISTRICT JUDGE